Okay, Ms. Arango. Good morning. May it please the court, Jamie Arango on behalf of the petitioner Javier Gonzalez. This case turns on whether the realistic probability test should be applied to a state statute that is explicitly and intentionally overbroad. The Board of Immigration Appeals has examined this specific Florida statute for marijuana twice recently. They issued a lengthy decision in matter of Navarro-Guadarrama, and they issued a much shorter decision in this case. But in both cases, they reached the same conclusion that the Florida statute was a match to the federal statute by relying on their finding that a respondent must find a case in which this statute is applied in the suggested generic manner. This is asking Gonzalez to prove something that's impossible. Florida, per their statute, does not differentiate between the parts of the cannabis plant. A prosecutor is not required to prove what parts of the plant are possessed, simply that the plant itself is possessed. But they have to prove more quantity, right? They do have to prove quantity, yes, but that quantity can include everything. And that is, that's more of a sentencing in a status, level status for the charge rather than what's scientifically necessary in order to have a charge under that statute. The BIA suggests that case summaries would state what parts of the plant were possessed. However, that's not practical, nor is it true. Because the entire plan is criminalized, it's not necessary for case summaries to state which parts of the plants are possessed. The legislative history demonstrated that the change in the statute was intentional. After the Florida Supreme Court overturned a conviction, the legislature responded by amending the statute to specifically include all parts of the plant. The intention may have been to simplify lab duties, and it probably does that. But that does not mean that the direct effect of their simplification is not to include substances which are not included on the federal schedule. It must be accepted that Florida prosecutes individuals for possessing all parts of the marijuana plant. If that was not their intention, then there would have been no reason to change the statute. The government suggests that the statute is silent as to whether or not it was meant to include stalks and stems. The statute is not silent, it's explicit. Florida was aware of the federal definition as their definition matched prior to their amendment. Does Florida ever discuss what are all the parts? In other words, is there any controversy about what's a part of the plant and what's not a part of the plant? Well, Florida specifically states that it is the entire cannabis plant. To include the stalks and it says including, I'm not sure it says including stalks, does it? In other words, it says all parts of the plant, its seeds are resin. I didn't know whether there was any wiggle room there in sort of not specifying each part. Does that matter? I don't believe so, because I believe that was intentional. So the case that the Supreme Court overturned, the argument in that case was that because the prohibited materials had included stalks and stems, which were not prohibited at that time, then the entire conviction had to be thrown out because they weren't separating what was prohibited material and what was not prohibited materials. So they intentionally included everything. So they intentionally included the parts that the you mentioned the Guadarrama, another syllable yet. How do you say it? Guadarrama, see? Okay, good. Well, I was close. Okay, thank you. Thank you for that too. I feel better already. Too much French for me. I don't do so good in Spanish. Hey, but my point simply is now we have a decision by them and of course you know what they say. It went up the 11th circuit and now the 11th circuit's dismissed it and sent it back, as you probably know. So are we supposed to give Chevron deference to that decision, 2019 decision of the BIA? I don't believe you have to give Chevron deference to that decision. And one of the reasons is that the board really makes big mistakes in both of these cases. We kind of back up a little bit here. The board never discusses in either of the Guadarrama-Navarra or this incident case what approach they're applying. Are they applying a categorical approach, a modified categorical approach? So the board doesn't address what is essentially the first step of this, right? So the Florida statute, the drug schedule in Florida is more broad than the federal schedules. So therefore, under a categorical approach, this is not a controlled substance violation. So you have to assume that the board is applying a modified categorical approach, but they don't break that down. They don't apply that reasoning in either of these decisions. So in the modified categorical approach, then we look to the language of the statute. But really this reasonable probability test, do we ignore the plain language of the statute to infer a meaning? This is not legal imagination. This is the actual language of the statute that intentionally been changed to include parts of the plant that are not prohibited under the federal schedule. So to say that this is a generic manner that this isn't being applied, Florida did this to simplify prosecutions for possessing marijuana. But in doing that, they have criminalized parts of the plant that are not criminalized under the federal statute. If we look at the least of the acts criminalized, the least of the acts criminalized are possessing stems and stalks, which are not a violation of the Controlled Substance Act. I get your argument. What about the fact that what we're applying this to is not the formalistic, but under the realistic possibility, realistic probability, sorry, wrong word, under the realistic probability test, it is whether we're applying it to conduct beyond the generic definition. Does focusing on the conduct get back to the weight? Because you know exactly, you've said exactly what Florida did. So by fixing the weight and that, do we get back to a conduct test that's okay? Even if we get to the conduct, the conduct is the possession, right? And in Florida, all you have to possess are stalks and stems in order to be under the statute. It fails no matter how you look at it. This is not a statute that we're, it's not the jellyfish test, right? We're not trying to find this abstract conduct that may never be prosecuted. In Florida, if you possess, if you had, not anymore, but previously at the time of this arrest, had you possessed stalks and stems, you would have been convicted the same as if you possessed leaves. There's simply no differentiation between the two and they were not required to, it's not required by law. So asking a respondent to try and prove that the state intended what it said is simply not the burden that the respondent should have. And it's not really the burden that state should have either. The state wrote their statute. They wrote it with intention and with purpose and in their intention and their purpose, they criminalized the entire plant. They did not simply criminalize the leaves. They didn't say, well, but we're, we're only going to do this if you also possess the good parts, right? We're only going to do this simply so that we can get to the good part. And by doing so, there's not going to be a case summary that exists or a case that a respondent can point to and say, oh, in that case, he only possessed stalks and stems because that's not a valid defense. There's no reason for anyone to bring that as a defense after the legislature changed the statute itself. And is that, and that would be true even if it seems very unlikely as a practical matter that perhaps a prosecutor would bring a case against someone for just possessing stalks and stems. Well, and I think we have to think about what marijuana looks like when it's possessed, right? Especially in incredibly small quantities, right? It's, it's a plant and it's, it's, it's, it's in a dried form. So it's not as if, if it tests positive for being part of the cannabis plant, it's not as if a prosecutor is going to say, okay, but I need you to go through and figure out whether or not that was only stalks and stems, right? So the government's argument kind of hinges on, well, no one would do that, right? I mean, why would you only possess that? But that's, that's not really the test here. The test is what the statute requires. The statute requires that you possess cannabis in any form. And by doing that, you criminalize more than the Federal Controlled Substance Act criminalizes. Again, it's not as if the federal government changed their, their act after Florida's, and this was, oh, oops, you know, we just didn't catch up. We were just behind. The Controlled Substance Act contained this exclusion and Florida had this exclusion, and then they changed it. They changed it to include everything. Again, it was, it was purposeful and it was intentional and they did it in order to criminalize the act of possessing cannabis itself, not just specifically the leaves. The, the consequences that are bigger here than this statute as well. So when we're talking about a reasonable probability test, the consequences of finding that the intention of the legislature is not purposeful means that the plain language of statutes should be ignored. And instead courts should infer what they believe the statute to mean, inferring that the statute, that the state meant to do something contrary to their own language. State statutes need to be given the weight that they deserve and should not be upset by the board's desire to make a conviction fall within the standards of the INA. So in this case, this, the least of the acts criminalized are possessing stocks and stems. That is not a controlled substance violation. And the respondent would remain eligible for cancellation of removal for certain non-permanent residents. I do also want to note before I save some time for rebuttal that the board in this decision did not address any of the good moral character arguments and decisions made by the judge. So if this court does overturn that decision, it does have to go back to the board so they can make findings because they simply ignored it and said, we don't need to make any further findings because we decided he's ineligible. So we don't need to decide anything else, but they, they essentially do need to decide whether or not they agree with the rest of the immigration judge's decision in this matter. I will reserve the Savorne Jay. Good morning, your honors, the court. My name is Stephanie Savorne Jay, and I represent the government in this matter. Mr. Lopez Gonzalez and seeking removal has failed to consistently meet his burden of showing that he has not been convicted of a disqualifying offense, specifically an offense relating to controlled substance as defined under the CSA. In 2001, Mr. Lopez Gonzalez was convicted of possessing not more than 20 grams of marijuana under section 893.136B of the Florida state statute, an offense that is categorically a controlled substance violation. He has repeatedly failed to show a realistic probability that the state of Florida would prosecute a defendant under this statute for possessing of a marijuana plant that do not fall within the federal definition of a controlled substance. And here's where I'd like to begin with the definition of marijuana, because I think there has been a little bit of confusion about what is encompassed by the Florida statute and what is encompassed by the federal statute. So Florida defines marijuana as all parts of a cannabis plant, whether growing or not, including its seeds and not resin. The federal statute, by comparison, contains all parts of cannabis sativa L plant, whether growing or not, its seeds and resins, and every compound manufacturer, salt derivative mixture or preparation of such plant, its seeds are resin. So what is excluded from the federal statute are mature stalks of the plant and the plant does not include oil or cake from the seeds of such plant, and it does not include the sterilized seed of such plant. So I want to bring focus to this because it's important as the board focused on mature stalks as well. And so in matter of not, the board really highlighted the fact that with respect to legislative intent, what Florida was doing by removing the exception regarding mature stalks and stems was focusing on those parts of the plant that are valued to the drug user. Now, with a point of clarification, Mr. or your honor, Benton, I believe you asked or mentioned about the 11th circuit case, the petition for review for matter of Navarro, God Ramo. So that case, the respondent, the government filed a motion to dismiss for the lack of a final order of removal. And that was because Mr. Navarro got a Ramos case. His conviction was actually vacated because of procedural defect, largely as it pertains to Padilla and whether or not he was aware his plea carried immigration consequences. That being said, we do believe that matter of Navarro, God Rama is good law. And while it's not directly on appeal here, it does fill in the gaps regarding Florida and what Florida intended with the removal of the institutional part of this. It is a real decision of the BIA, right? Yeah. Three board members, right? So therefore, do we have to give it Chevron deference? I think that the court can look to it, but what is really before this court right now is whether or not the conviction in this case has controlled substance violation, which this court reviews de novo. And the board in that case is not really interpreting per se an immigration statute. And it's looking at whether or not a state statute qualifies for federal purposes. So you think Chevron doesn't apply because they end up talking about Florida law a lot? Right. The focus is whether or not there is a categorical match. What is not the board interpreting necessarily the Immigration and Nationality Act. We're engaging. Of course, are you the government saying that you're not seeking any sort of Chevron deference or even the lesser levels of deference? We don't really view Chevron deference as being an applicable form of review in this case, being that matter of Navarro-Guadarrama is not directly on review. And to the fact that Chevron pertains more to the board's interpretation of an immigration statute. Here we're engaging in an analysis as to whether or not a state statute here in the possession, simple possession of marijuana constitutes a controlled substance offense under the CSA. So the court here reviews that de novo and rather looks to matter of Guadarrama-Navarro to fill in the gaps regarding what Florida has done with respect to marijuana. Not even the lowest form of deference. As you know, there are two or three levels. The lowest form is the 1944 case. I can't remember right now the Supreme Court, but I bet you know about the different forms that were required to give deference to decisions of agencies. You think that only applies in the very case being appeal? Well, the board here did set a precedential decision, but the government takes a position that what is before the court is de novo review. And here, again, the court is not necessarily interpreting an immigration statute, but it's engaging in an analysis regarding whether or not a state statute and a conviction under that qualifies as a federal offense. Okay. Thank you. So with respect to that, Mr. Lopez-Gonzalez's attorney has pointed out that the board did not engage really in an analysis regarding divisibility. So I wanted to address that as well. The immigration judge did discuss this in its decision. The immigration found that the pertinent statute 893.136 was divisible because the controlled substance offense or the controlled substance is an identity or an element of the offense, which has to be reached or agreed upon by the jury. And from there, having found that 893.136 is divisible, then look to the records and the records show undeniably that he was convicted of possessing not more than 20 grams of marijuana. From there then, it found that it was categorically a crime involving a controlled substance. However, we disagree with Mr. Lopez-Gonzalez about the definition of marijuana and the fact that it's overbrought on the statute. So under Florida, and I think you've pointed us to that definition, the definition is pretty clear, means all parts of any plant of the genus cannabis, whether growing or not. And it, how can that not mean all parts of the plant? Well, again, because let me just clarify, all parts of the plant, the seeds, but not the resin. So for purposes of our, so, all right, so, but, okay, go ahead. So I think because we looked at Navarro-Gadorama for guidance on this issue, that there was an exception before that was removed. And what the critical exception that we're focusing on for purposes of this case are mature stalks. But if we look at, but I'm still on Florida statute, tell me where in the definition of Florida statute would exclude mature stalks? What part of that, if I'm a prosecutor going to see whether the evidence that's been presented to me is sufficient to bring a charge, what in that definition tells me I can't charge mature stalks? So the definition itself does not speak exactly to mature stalks and it's government's position that rather it's silent on the issue. Would that mean it's also silent on the leaves? Yeah, exactly. So it doesn't say that specifically. And so we have to look to see how the Florida state is prosecuting offenses under the statute. And that's why we go to applying the realistic probability test. So it's a silence regarding this invites us to go and conduct a further inquiry to see what the state has done. So how would this, in this particular situation, just so I understand as a practical matter, how this would work. So you want to show some, someone comes and says, look, it's just all parts are covered under Florida. And you say, well, you've got to show that what you have been charged with, what actually Florida found you possess. How would a person determine or figure out through the records of Florida, whether it's leaves, dried leaves or stalks? Is that something that's identified in Florida? It even, could you even determine if it was the leaves, I guess, is my point versus the stalks, the stalks versus the leaves. So I'm not very well versed exactly in that how they differentiate what are the stalks, mature stalks or leaves. But I think it has to go more to what the intent is, what is of value, what parts of the plant are of value to the drug. Okay. So in this particular situation, how do we know it was leaves? Well, because he hasn't claimed that he was possessing anything other necessarily like mature stalks or an oil or cake from seeds. He hasn't said that during his testimony, he admitted that he was in possession of marijuana as well as rolling papers. And then it smelled of it. Now, presumably then if he's possessing rolling papers to smoke something, it is from a part of the marijuana plant that is a value to the drug user. So leaves or another different part versus mature stalks, which are not of value to drug users being that they're used more in paper production or for other industrial purposes. And that is why it's excluded under the federal statute. But not excluded under Florida. I'm just trying to figure out how and I apologize. Maybe I need to stop on the stop in this line of questioning because I'm just a little confused how when you say all parts of the plant under the state statute and you just carve out some things and not others. I'm just trying to figure out how we approach this. And I think it's difficult. It's all parts of the cannabis plant. So it is really silent in that it does not explicitly set forth the various forms of the plant itself. And so you're going to look then to the state case law to determine what is being prosecuted. And there are no case summaries under a federal law that indicate that Florida was prosecuting someone only for the possession of mature stalks or stems. Well, let me follow up on that because that makes me curious from your answer to Judge Kelly. And I apologize if I'm going off on a irrelevant tangent. But so are you saying that you think in Florida that when a marijuana charge is brought that the charging instrument specifies what part of the marijuana plant the defendant is accused of possessing? And unfortunately, to my personal knowledge, I am not aware of the procedurally whether or not in a charging indictment that is set forth. Don't you think that would be rather strange that if that if you have a statute that's as would parse the the anatomy of the marijuana plant in the charging instrument? Well, having done a little sounds a little doesn't make a lot of sense to me, but go ahead. Done a little bit of research on it. My understanding is that once the officers apprehend the substance, they turn it over to FDLE, which is a Florida Department of Labor Enforcement, and that department then tests the substance that it has. And there, if there's a detectable amount of THC, then it is brought to the government attorney's office and said, this is THC, this is marijuana. But you're not going to find the THC necessarily in mature marijuana stalks because those are no value to the drug user itself. I assume that these facts, which by the way, I don't know about, I assume that these are not in the record, right? About THC and whether THC is in the stalk. And THC could be, and again, in a stem, for example, but the facts here are not in the record per se. It is simply regarding marijuana. Now, is where the THC is in the plant, is that subject to judicial notice in any way? It's just a fact. Everybody knows a doctor of marijuanology would say that. Is it subject to judicial notice before this court? Or am I not following your question? I know. Would an expert on marijuana say there's THC will realistically probably be found in the plant? Does such research or findings exist? Or do you know? I don't know. Okay. Thank you. Thank you. I see that I have 52 seconds left. So if you don't have any further questions, then I'll briefly conclude. Okay. Let's see if questions, Judge Shepard, questions? Judge Kelly, further questions? No. Okay. Conclude. Okay. Thank you, your honors. So again, the government contends that petitioner has not demonstrated that his offense is not a controlled substance. It's government's position that again, the definition of marijuana is not facially overbroad. And therefore the realistic probability test is warranted such that we look to the cases. Here, petitioner has again pointed to no cases in which the state of Florida has prosecuted persons for parts of a marijuana plant that are not met as burden. And we request that the court affirm the board's decision. Thank you, Ms. Rango-Rabau. You're muted, I think, Ms. Rango. I am. Thank you. Now, proceed. So just a couple of things here. I'd like to go back to the definition and the difference between the federal definition and the Florida definition. I think it was misstated that the definition does not include the seeds. It does include the seeds. Both definitions actually include the seeds. Both decisions actually include the resin, every compound, manufacturer, salt, derivative, mixture, preparation of the plants or seeds or resin. I do think that it is important to note, too, kind of what's happened when we're talking about testing for THC in marijuana products. Obviously, that has evolved greatly in the last two or three years. The Controlled Substance Act changed in December of 2018 that now substances which contain THC less than 0.03% are also not confederately controlled substances. And this has led to changes in states having to change their statutes and change the way that they test for the levels of THC in marijuana. So I think that stating that, again, that we're only talking about the good parts when we prosecute is simply not true. This is a dried material that's mixed together and combined. And these labs, specifically the Florida lab under the Florida statute, is not separating out these mixtures and saying how much good stuff there is and how much bad stuff there is. So just because the respondent, Mr. Gonzalez, had rolling papers and a small quantity of what he believed to be marijuana does not demonstrate that he possessed marijuana. It demonstrates he possessed marijuana. And also, I think when we get to that far into this analysis, we're not looking at the statute anymore, which is what we should be focused on. So we should be looking at the statute and the least of the acts criminalized. We know what statute he was convicted under. The record going as far as what he actually possessed and what his actual actions were, really not relevant. What's relevant is that he was convicted under this the federal statutes. If there's no further questions, I'll continue. I'll check. I'll check for you. Judge Shepard, further questions? No. Judge Kelly, further questions? Nothing further. Okay. Conclude. So in conclusion, this case should be remanded to the Board of Immigration Appeals. It should be found that this is not a controlled substance violation. It is not either a categorical match or a modified categorical match and does not fall. His conviction falls under the realistic probability test. He was convicted. Many people are presumably convicted in Florida for possessing stocks and stems. The least of the acts criminalized are not controlled substance violations. In addition, it should be remanded to the board to make a decision on whether or not the immigration judge correctly decided that he lacked good moral character to qualify for cancellation of removal. Thank you, counsel. Thank both of you for the argument. Case number 19-3412 is submitted for decision by the court.